My name is Tim Kalinowski. I'm representing Gabriel Smick on the field here. We're requesting a remand with instructions that Section 508 of the Only One Marriage and Dissolution of Marriage Act is applicable to related party adoption act proceeds. I believe this is a case of first impression healing today. I'm never comfortable saying that because just because I can't find it doesn't mean it's there, but I didn't find any cases directly on a point. This is about attorney's fees, and while it's only about attorney's fees, that's important to my client. The amount that we're seeking for the first proceeding that we don't think should have happened is probably going to take my client in excess of six years to pay off. This doesn't include the ongoing costs of litigation where he's going to need to hire experts in addition to the other costs and attorney's fees. There are three possible approaches this court can take, and we really did not address one in our brief, and that first one would be that the only live pleadings before the court in that situation were our motion to retain jurisdiction and our motions to enforce existing Illinois orders related to it. The California pleadings were never actually made part of the clerk's record, although they were mailed to the judge. As I said, if that's the case, Section 508 obviously applies. The trial court, quoting from this court's appellate opinion, said that the California proceeding was analogous to our Adoption Act and then proceeded to do the analysis from there. And so that's what I addressed in the brief. And so the first thing that we're looking at in that one, and so this is the second approach, is that if that's analogous- I'm not sure I understand what the first approach is. Can you hone in on that a little bit? The first approach was that the equivalent of our Adoption Act was filed in California first by the opposing party. And Mr. Cranley filed a motion to retain jurisdiction in Illinois and then had to file a number of motions to enforce the visitation order. So one approach could be that the only thing that was before this court or before the trial court was stuff that was under the IUDMA. Well, I mean, I understand one of your arguments to be that there were motions to enforce the visitation orders which were filed and there were hearings about those motions and that at a minimum, the attorney's fees incurred for those motions to enforce visitation orders should be an issue at least. I mean, here the trial judge didn't even consider it. Correct. So that's one- And that's my third one, yes. Oh, okay. We're still on one. Okay. So that's my third one. The first one that I'm trying to explain that I didn't put in the brief is just simply there were no adoption proceedings before this court even though it undertook them because all of those files were in California. It was filed in California. So the only thing the court really had before it was stuff that was under the IUDMA. So that was the first one. And because the trial court really didn't address that and said we're treating this as analogous, I really didn't address it, but I'm just putting it out there. That's probably the simplest way to approach it. But a lot of the work was done to address the California equivalent of the Adoption Act. So there were fees associated with that. And if we're going to take that analogy, then I still think Section 508 is applicable because that acts as a modification of the existing visitation order or because the Adoption Act proceedings are an ancillary proceeding incident to or reasonably connected with the Illinois Marriage and Dissolution of Marriage Act. And then the third option was, hey, at least look at the enforcement proceedings, okay? Now, my position is, you might notice that I don't exactly have the same accent as everybody else in the room. The legal system I grew up with, this was called a suit affecting the parent-child relationship. And that's exactly the language that Judge Alfeld used in his, that he says that this proceeding was about permanently severing the parent-child relationship. And so our primary position on the ancillary part of it is that they're the same thing. They're really the same thing. They're done in different acts. We cite a case that says why they're done in different acts is to provide the parent who they're trying to limit their parent-child relationship to provide them additional protection from a related part of adoption. And then we also have this case in Ray Conrad that cites the law related to what our courts have determined to be ancillary. And then they include things such as criminal interference with visitation, domestic violence, bankruptcy, another bankruptcy, contract litigation. All of these are considered ancillary or incidental too. And I'm looking at this, and if those are ancillary and incidental too, or reasonably related, connected with, how can what is essentially a permanent child custody argument not be ancillary and related too? So that's one approach of if 508 would be applicable. The other one is a measure. Let me ask you a question. After our previous decision, I take it then a petition to terminate parental rights was So this is all still filed in the divorce proceeding? Yes, sir. And that's filed by the mother and her husband, the petition to terminate parental rights? I suppose, I think technically under the law it's filed by the step-parent with joining the parent, bringing the parent along, but yes. Well, we're no longer under California law. Correct. So it's filed by both of them? Yes. And there is, and does that pray for an adoption? Yes. So it is a petition for adoption, and it's based on a claim of unfitness? Yes. Okay. Filed in the divorce proceeding? Correct. Okay. So the other approach to apply 508 other than the ancillary is that this is a modification. That is, an order under the Adoption Act is a modification. From that point of view, if you terminate an order, that is modifying the order. Okay? And if we look at 759CS5-607 of A2, a termination is visitation. Okay? So it specifically says in the Illinois IMDMA. It specifically says in the IMDMA that if there is an order under the Adoption Act, then the visitation order is terminated. That specifically is a modification. Additionally, in the Adoption Act, it says if the termination is not granted, we then do a modification hearing to, in other words, we revisit visitation. And had your client filed any response, or I'm sure filed responsive pleadings to that adoption petition, was there any specific relief sought along those lines to deny the petition for adoption and modify my visitation, or? We have filed all kinds of things saying that it is unconstitutional, that race judicata applies, that latches applies, that estoppel applies. They've all been denied to this point in. Well, but I'm not in defenses, but I'm looking for alternative relief, which may more clearly bring you under the Act. Under the Adoption Act and the termination provision, if the person is found to be unfit, you then have a termination proceeding. We're suggesting and we're arguing that the current visitation order is proof that there is a means less restrictive than termination. They agree to it. It works. No one is claiming it doesn't work. No one is claiming any harm. And so, yes, we're claiming that the current visitation order is the least restrictive means short of terminating parental rights. So we are trying to use that visitation order as the reason why there shouldn't be termination. So, yes, that is being raised. So why is this modification issue important? Well, there's a two-year window where you're not supposed to bring another request to modify a visitation order unless there's a change in circumstance, a significant change in circumstance. And if you look at this Court's summation of what happened in the prior proceedings, the visitation order it was talking about was entered in August of 2011. The motion to essentially terminate my client's rights in California was brought February 27, 2013. That's within that two-year window. So if the Adoption Act isn't treated as ancillary to or a part of or a modification of the INDMA action, we can now circumvent the two-year waiting period on modifications. I'm going to suggest to clients that, hey, let's reach an agreement. You've got the money. The other person doesn't. Let's reach an agreement. Then we'll hire a private investigator. We'll go get pictures of them drinking in a bar. We'll get a couple of those. And then we're going to file an adoption action. They don't need attorney's fees. They've got no money. How are they going to defend it? Can you file a petition to terminate parental rights without requesting adoption? I do not believe so. When I read this action, I do not believe so. Well, a person's parental rights can be terminated in the absence of an adoption, right? And then the child is then available for a later adoption. Well, I don't think these children are available for adoption. But the way I read that, I don't think the mother has standing to seek termination on her own. When I read the Adoption Act, not the Juvenile Act, but when I read the Adoption Act, I don't see that the mother has standing to bring termination on her own. I mean, basically it says the step-parent is someone who may adopt. And as part of that adoption proceeding, you're doing it through unfitness, and you're seeking to terminate. And the mother is just brought along as part of the pleading for the step-parent. It says that the biological parent must be joined. Okay? So I don't see that there's any way to seek just a termination action. And that's one of the reasons I'm arguing that it's unconstitutional below, because you're not even supposed to know that there's adoption waiting when you consider termination. That's not supposed to be part of the equation. You mean before the court? Do what? You mean the court's not supposed to know that there's an adoption? It's supposed to try to set that outside of its mindset, yes. In other words, during the termination period. In juvenile proceedings, I mean, it's a very common thing. I mean, this is because you have two hearings. You have a hearing on fitness, and then you have what's called a best interest hearing. And at that best interest hearing, you know, practically always part of the proof is that there are foster parents. They have had the child for a couple years. They're willing to adopt. I mean, that's how it works in Illinois. I understand, but reading the case law, that's not supposed to get there during the termination proceeding. The best interest is supposed to only consider is it in the best interest of the child to terminate the rights of this unfit parent. It's not supposed to ask what happens after that, the way I read the case law. So while it is a best interest hearing, the sole question is, is it in the best interest of the children to terminate this parental parent's rights, not are we pursuing an adoption? I think we're talking about two different best interests, but go ahead. Okay. Okay. The best interest I'm talking about is that second bifurcation. After the unfitness determination, determination, we're going to determine if we're going to terminate. And that's the termination hearing as opposed to the adoption hearing. And I'm saying at that point, according to the case law that I've read, the possibility of an adoption isn't even supposed to be considered. So the other thing that we have in the IMEMA is a protection against vexation modification hearings. We're not supposed to bring them so frequently that they're considered vexatious. If they are, then it's automatic to get attorney's fees. It says shall if the court determines that what's being brought is vexatious. Well, there's a one-year look-back period on the habitual drunkenness or drug use. Under the Adoption Act, we can bring that every year because that one-year look-back is relevant. But under the Family Code, then we're not. And then the last thing is, is if the Adoption Act is an ancillary or related, we never even get to bring in our race judicata latches and estoppel arguments that say, hey, they've agreed to this. They knew what his condition was. They knew that this circumstance works. You can't now pursue termination when you agreed to this years ago and his circumstance hasn't changed. And so if these aren't connected, how are we bringing up our what went on with the divorce decree? Normally in a divorce decree, once you've got that divorce decree, you're not allowed to bring up events that happened prior to that. During a modification, you're only allowed to bring up what happens after the last order to say why there should be a modification. But in this, then that doesn't apply. How do I make my race judicata latches and estoppel arguments? Well, we're really just talking about attorney's fees. We're just talking about attorney's fees. I've been trying to explain why this is a modification and why it's important to treat the Adoption Act as a modification of the visitation order. Again, this is all contingent upon those. Let's say that we said, okay, we agree that attorney's fees can be considered under these circumstances. I'm not sure that wraps around all these other arguments that you're making about two years before you can modify a custody order and so forth. Well, certainly your order would not address those. But I do think once you say that they're connected, I think the next case that comes along can say they're connected. We get attorney's fees because what you're really trying to do is circumvent that modification. And it doesn't give the people an out and just trying to go through the Adoption Act as an in-round modification, and that's all I'm trying to point out. Okay. And then the last argument is what you brought up to begin with is that if the 508 doesn't apply to the whole thing, then I'll catch it on my butt. Thank you. Mr. Steiger for the appellate. Thank you, Justice Schwarm. Mr. Kalinowski, if it pleases the court, we are talking about attorney's fees. Judge Alfeld denied an award of fees applying the American rule, which is absent statutory authority or a contractual agreement, each party pays their own fees. We have two statutes here. We have the Illinois Marriage and Dissolution of Marriage Act, which is purely statutory, which authorizes the award of attorney's fees under 508. And we have the Illinois Adoption Act, which does not authorize attorney's fees in any shape, manner, or form. The appellant is arguing there's overlapping authority and there are overlapping issues. At page 35 of his brief, he states, the fact that the adoption case is independent of dissolution is irrelevant because the Adoption Act litigation is instant to or reasonably connected with the IMDMA custody order. We do have this situation where we still have a D number on this file, and you remember your opinion. This case was filed in California. It was an adoption in California. Judge Sweet decided that we would apply substantive California law and procedural Illinois law. We went through the whole trial on the California pleadings. It's basically very similar to ours except they filed two petitions, one petition to free the child from custody, which is basically the parental termination, and then the second petition, and actually a different number, for an adoption. But we handled it procedurally as proceeding on the termination aspect of it because this man is physically completely incapable of exercising any kind of parental duties. That came up here. The court said, no, you should have applied Illinois substantive law, and we're back there doing that now. What was refiled pursuant to the remand order was an adoption petition. We don't have a petition to terminate parental rights. It can be terminated in a juvenile court proceeding, but what we filed was an adoption proceeding. So we have two separate statutes. There is actually a very interesting case that I didn't cite in the brief. It is Marriage of Rhodes, R-H-O-D-E-S, which is a second district opinion from 2001. The site is 326 Ilhab 3rd, 386. And this is a really good example of the clear line that's drawn between the two statutes. The case there was kind of the reverse of ours. This was a divorce proceeding in which the question was, could the judge hearing a divorce proceeding vacate a prior consent to adoption? And the second district said, no, that's not within the statutory authority of the Illinois Marriage and Dissolution of Marriage Act. And what they said was, in a proceeding brought pursuant to the Marriage Act, the circuit court is without jurisdiction to enter orders relating to adoption and the termination of parental rights. So by analogy, we have the same situation in the reverse. We have an adoption proceeding. This was an adoption proceeding from the beginning, from the hearing, and what we're proceeding with right now. What they're asking for is $28,000 worth of attorney's fees in the original adoption proceeding that Judge Sweet heard applying California substantive law. Okay, let me stop you there and ask you a question about that. I mean, what we're talking about here is attorney's fees that have already been incurred in prior proceedings. Correct. And do you agree that there were pleadings filed by Mr. Kalinowski on behalf of his client to enforce visitation and some things like that? I would agree there were pleadings filed. There was never any hearing because visitation was never denied. What they would do is we'd have the kids live in California. They'd come back two or three times a year. What they would do is one time they sent me a letter, and I didn't respond to the letter quickly enough. They filed a motion to attempt because I didn't respond to the letter quickly enough. Visitation was never denied. It was provided each time. Okay, but, you know, whatever it is, let's say there's only one hour involved in preparing one pleading or whatever. But if that involved enforcing his right to visitation under the Illinois Marriage and Dissolution of Marriage Act, why wouldn't he be entitled to at least make a claim for attorney's fees for whatever that time is? Because this is an adoption proceeding. It's an adoption proceeding. It's two proceedings. No, it's really not. You're doing an adoption proceeding. He's bringing a proceeding to enforce his rights to visitation. But he didn't file it in any kind of a separate approach. I mean, number one, we never had hearings. It's never been a separate approach. It's all in the divorce case. It is. It is. It's all in the vena. But the problem is there was never a denial of visitation. So one of the things the judge looks at when they award attorney's fees is was the pleading necessary? The classic award of attorney's fees. Just a minute, though. We haven't got there, though. The judge said you don't even get a hearing on attorney's fees. Right. So that's the question before us. You know, is there any scenario here under which attorney's fees could be awarded? And I'm trying to start at what I would call the minimal thing here, which is pleadings he's filed under the Illinois Marriage and Dissolution of Marriage Act. Why wouldn't he at least get a hearing on those? I don't think you could open that door. I mean, this is an adoption proceeding. The adoption statute is very clear. There is no basis for award of fees in an adoption proceeding. The Illinois Marriage and Dissolution of Marriage Act is very clear. There is an award of fees for enforcement of visitation. Right. And this is a proceeding under the Adoption Act. This was not a proceeding to modify visitation as much as they want to spin it. This was not a modification of anything. It was an adverse step-parent adoption. Well, I understand it wasn't to modify it, but he's filing to enforce his visitation. And I know you're saying there was never any denial, but there was some attorney work done for that purpose, as I understand it here. We don't have a transcript of the hearing. But the difficulty you have, Judge, is in the hearing that we had, it was all about this is an adoption. This is, you know, an adoption should be, because it impacts custody, it impacts visitation, we should be able to get fees on the whole thing. It's not really an adoption. It's really a combined, you know, proceeding. Let me ask you another question. Sure. Let's say, forget the stepfather. He's not in the picture. Mother's not even remarried. But we have the same scenario. Could she have gone in and said, you know, he's unfit, I file a petition to terminate his parental rights, no request for adoption, and do that in the divorce proceeding? No. I mean, it would be based on the unfitness provisions of the Adoption Act. You can't terminate parental rights in a divorce proceeding. You can restrict visitation. You can have supervised visitation. But there's no provision under the Illinois Marriage and Dissolution of Marriage Act to terminate parental rights. Okay. But I think that's the important thing. If you open the door, how do you resolve this? Now, in another situation, you would never have a case as confused as this one where you have an adoption proceeding in a divorce pleading. But they basically created that problem. Because this was filed in California, they argued vigorously that jurisdiction should remain in Illinois. Judge Sweet had the conference call with the judges in California. They ultimately decided that, yes, they would hear it in Illinois, and then he made the decision applying California substantive law, but Illinois procedural law, and then here we all are. But fundamentally, if you look at that Rose case, they make very clear distinctions that we have two very specific statutes. The proceedings under the Adoption Act are purely statutory. The proceedings under the INDMA are purely statutory. And the two do not mix. You cannot refer one to another. Because think about it. In every adoption case, you're going to have an impact on custody and visitation by the nature of an adoption and termination of parental rights. So can you then say that you can argue for attorney's fees in every adoption case? That's what they were arguing. That's what they argued in Judge Althoff. Well, I'm not sure, at least in this court, that they're only arguing in a related adoption. And it does get more mixed up in a related adoption because, you know, you have orders pertaining to custody and visitation between the person wanting to adopt, here the mother. I mean, because under Illinois, we go through a procedure where she's a petitioner in the adoption case, too, and the father. So you've got the mother and the father squaring off here on the issue of adoption. And the stepfather is thrown in, too, of course. Absolutely. But it is an adoption. And the Adoption Act is very – you know, if the legislature wanted, they could say, you know, in an adoption, you can also petition for fees. They didn't do it. There is no provision for reward fees in an adoption case. And what they were arguing that Judge Althoff felt is not the isolated issues, although I think they probably made that argument. They were looking for fees on the whole thing because the adoption, by its nature, was going to impact visitation and custody and dad's contact with the kids. And therefore, they should get fees on the whole thing. And that's simply not the case. That Rose case is very helpful. It really shows where the lines have to be drawn. And it's not, you know, suggested. It says the court is without jurisdiction. And it's very clear. And it's a recent case. I think it's well over three. Is that R-H-O-A-D-E-S? R-H-O-D-E-S. O-D-E-S. 326 Ilab 3rd, 386, 2001 2nd District. But it's a very good case. Thank you. Thank you, counsel. Mr. Kalinowski, you can come on up. Do you want time to reply on this Rose case? It was not cited in Appley's brief. You were just talking about this morning. And you certainly will be granted leave if you want to file a written response. I would like to. All right. How long would you like on that? All right. Fourteen days? That sounds good. Give yourself some time. That's fine. Just to briefly talk about the Rose case, without having looked at it, he says that it's very clear that there's no jurisdiction. But there would be jurisdiction under the IMDMA to grant attorney's fees. And he says that these are two specific statutes. I do believe that the Criminal Domestic Violence Act is separate from the Family Code. I do believe that bankruptcy laws are separate and apart from the IMDMA. Yet the Conrad case and the cases at its site says that's ancillary, an incident to or reasonably connected with, and I think that's important language. He says you can't terminate a parent's rights in a divorce decree. You can't effectively. You can say you have no parental responsibilities. You can't exercise any of them. You get no visitation. And until someone modifies it, that's permanent. Now, there might still be rights of inheritance and so on and so forth. But otherwise, that is effectively doing the same thing, as I mentioned in my brief. If you do that, I'm filing the same case. I'm filing under the same cases saying that what you're doing is unconstitutional and has to be clear and convincing evidence that satisfies the Supreme Court cases related to terminating parental rights. I'm using the same language because you've cut off all my access. It's the same thing. As I cited, there's a case there that says that what we're really trying to do is get the parent more protection. And what you're saying is we have less. We have less because we can't finance getting an expert. My client gets $1,400 a month in disability. $1,000 of that goes to maintaining food and medicine and so on and so forth. He gets $400 a month in disposable income. He can't finance this. And so this is the only remedy he has. He may not be indigent. What about the point you're proposing counsel makes that the Adoption Act provides for appointment of counsel? Well, it does if you're indigent. Well? And you should normally be able to have counsel. Are you speaking to pleading indigency before us right now? Well, I don't know if $15,000 a year is indigency. And every time we try to argue it, he says, but the state provides a caretaker that gets X amount of money a year. They provide the home and so on and so forth that you're not keeping in there. But even if that is a red herring, because in the situation we had here, they filed in California. How is my client going to go to California and plead indigency? Seriously? They had to hire attorneys to try to protect their rights. Mr. Cranley was involved with this case. He knew the information. My client was comfortable with Mr. Cranley. He has the right to the attorney that he wants. And that doesn't – since 508 should be applicable, then he should be able to seek compensation. Because he needs – I mean, the reason we have attorneys fees in family law cases is because we're concerned about shining light on both sides for the best interest of the children. Yet we're going to say if it's one that's more severe, we don't need to do that. So how are we supposed to shine light on the conditions here at $400 a month when we've already expended $28,000 in a proceeding that never should have happened because they filed it in California? It's not like my client messed up. It's not like Mr. Cranley messed up. So this is what we're looking for. I really think that the Inmate Conrad case that talks about this being ancillary is what should guide this. It's not directly on point, but I do believe it is persuasive precedent, as it's typically called. It's close enough. I don't think this is closer than the cases they've said are ancillary that fall under 508. Thank you, counsel. We'll take this case under advisement into a written disposition.